UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | Case No.: 13-CR- 405 |
| | ) | Honorable Norman A. Mordue |
| PETER COMPTON | ) | Senior U.S. District Judge |
|     Defendant. | ) | |

# Defendant's Motion To Suppress

The defendant, PETER COMPTON, hereby moves pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) for an order of suppression of tangible evidence seized during a warrantless law enforcement search of a Ford Sport Utility Vehicle occupied by the defendant Mr. Peter Compton and co-defendant Lorenzo Compton, its contents, and fruits of those searches. Mr. Compton also seeks the suppression of any statements attributed to Mr. Peter Compton by the government in response to questioning by law enforcement officers. Mr. Peter Compton relies on his constitutional rights and protections under the Fourth, Fifth and Fourteenth Amendments for the relief requested. In addition, Mr. Peter Compton seeks an evidentiary hearing to further develop the facts necessary to assist the Court in reaching a determination on the motion to suppress.

**STATEMENT OF RELEVANT FACTS**

The indictment in this case charges Mr. Peter Compton, along with Lorenzo Compton, with conspiracy to possess with the intent to distribute and distributing a controlled substance, in violation of 21 U.S.C. §§846 and 841(b)(1)(B) and Count 2, possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§841(a)(1) and 841(b)(1)(C) (Marijuana) See,

Indictment, CM/ECF Docket No. 14.  Upon information and belief[1], the charge arose from an encounter at a plant and vegetable business located at 8169 State Route 11, Chateaugay, New York.  This location is in the Northern District of New York.

*__Factual allegations relevant to the stop, search and seizure of the Defendants and the vehicle and its contents.__*

On August 22, 2013 at 8:30 in the early evening, brothers Peter and Lorenzo Compton were traveling eastbound on Route 11 in Chateaugay, New York.  Lorenzo Compton was driving his mother's car, a green Ford Sport Utility Vehicle, and Peter was a front seat passenger. Declaration, ¶2.  Lorenzo pulled the vehicle into a commercial garden/vegetable business located at 8169 State Route 11. Declaration, ¶2.  The business consisted of two large greenhouses, a large barn, a separate residence and a road- side farm stand.  The two brothers exited the vehicle and began shopping for plants, vegetables, and other merchandise at the business.  The brothers were in the process of purchasing plants and vegetables, speaking with the proprietor of the business, and preparing to pay for their purchase. Declaration, ¶3.  After approximately 5-10 minutes, a marked Border Patrol vehicle pulled into the circular driveway of the business. Declaration, ¶3. At that point, Peter observed the vehicle.  The vehicle was a marked patrol vehicle and the emergency light on the vehicle were flashing. Declaration, ¶4.  Agent Gottschall was the driver of the patrol vehicle.

---

[1] The information provided herein is based upon the relevant documents, provided by the government in discovery, the Declarations of Peter Compton, and the defense investigation of the case.

Prior to arriving at the business located at 8169 State Route 11, upon information and belief, Agent Gottschall was participating in a road block on Route 11, further east of where the business was located. Agent Gottschall has indicated in his report of investigation that "Border Patrol Agents observed a green colored Ford sport utility vehicle abruptly slow down and veer into the driveway of a residence and farm stand located at 8169 State Route 11 in Chateaugay, NY." At some point, Agent Gottschall left the road block and drove to 8169 State Route 11. (Exhibit A , Taylor I-44, 8/22/13)

As soon as he pulled into the business, he exited the vehicle. Agent Gottschall was in uniform and armed. He immediately ordered the two brothers to get into the green Ford vehicle. Declaration, ¶4. At that point, based on the commands of the officer, Peter Compton entered the vehicle. The officer went on to order Lorenzo Compton to open the driver's side window and commanded the brothers to produce identification. The officer took identification from the driver, commanded the brothers to stay in the vehicle, and returned to his vehicle with the identification. Declaration, ¶5

After about five minutes, the brothers were handcuffed and placed on the side of the driveway of the business. Declaration, ¶5. The brothers refused to give consent to search the vehicle. Declaration, ¶5. Sometime later a police dog was produced at the scene, according to police reports, the dog alerted to the open driver's side window of the vehicle. The dog was then placed into the vehicle and ran across the two seats. The dog was then motioned over the back seat and is alleged to have hit on two bags in the rear of the vehicle which had been previously covered with a blanket. The car and its contents were seized.

*<u>Factual allegations relevant to Miranda, questioning and statements attributed to Mr. Peter Compton.</u>*

In its discovery letter dated November 21, 2013, the government indicates that relevant oral statements pursuant to Fed.R.Crim.P. 16(a)(1)(A), if any, are reflected in the reports turned over in discovery.  The reports turned over in discovery do not contain any statements attributed to Mr. Peter Compton.  The letter further states that any written or recorded statement attributed to the defendant within the meaning of Fed.R. Crim.P. 16(a)(1)(B) are enclosed with the discovery letter.  No written or recorded statements attributed to Mr. Peter Compton were enclosed with the discovery letter.  Based on the non-existence of any statements attributed to Mr. Peter Compton, the defense is seeking to preclude the introduction of any such statements not noticed to the defendant at this time.

**ARGUMENT**

I.  **<u>THE STOP OF THE DEFENDANTS AND SUBSEQUENT WARRANTLESS SEARCH OF THE FORD SUV WERE CONDUCTED IN VIOLATION OF THE FOURTH AMENDMENT.</u>**

Mr. Compton moves to suppress evidence on Fourth Amendment grounds.  First, evidence seized was seized following his warrantless arrest.  Next, evidence seized was done so during a warrantless, unlawful search of the Ford SUV.

Mr. Compton's arrest was without probable cause to believe that he committed a felony offense, nor did he commit a misdemeanor offense in the officer's presence.  <u>Maryland v. Pringle</u>, 540 U.S. 366, 370 (2003).  Nor had he committed a traffic infraction.

The search of the Ford SUV made without a warrant was unreasonable and in violation of the Fourth Amendment.  <u>Arizona v. Gant</u>, 129 S.Ct. 1710, 1716 (2009) ("Analysis begins, as it

should in every case addressing the reasonableness of a warrantless search, with the basic rule that searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well delineated exceptions").

A.     <u>The Government's Burden Of Proof.</u>

In the case of a warrantless arrest, the government bears the burden of proof as to establishing probable cause. <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963); <u>United States v. Delossantos</u>, 536 F.3d. 155, 158 (2d Cir. 2008).

In the case of a warrantless search, upon the defendant's initial showing of entitlement to challenge the government intrusion, "the government has the burden of showing that the search was valid because it fell within one of the exceptions to the warrant requirement. " <u>United States v. Perea</u>, 986 F.2d 633, 639 (2d Cir. 1993) [internal citations omitted].

Here, Mr. Compton was a passenger of a vehicle which he had the owner's (his mother's) permission and authority to use.  He had permission to use the vehicle in the past and on the day in question, and he had used the vehicle in the past and had permission to use the vehicle on the day of the stop. Declaration ¶ 2.  See, <u>United States v. Rose</u>, 731 F. 2d 1337, 1343 (8th Cir. 1984)(Even though passenger on that day, defendant had permission of sister to use car and had used the car in past with permission.)  Peter Compton had a possessory interest in the vehicle and therefore, has a reasonable expectation of privacy in the vehicle providing standing to challenge the search of the vehicle.  <u>Rakas v. Illinois</u>, 439 U.S. 128, 148-49 (1978); <u>United States v. Ponce</u>, 947 F.2d 646, 649 (2d Cir. 1991).  His own legitimate expectation of privacy has been infringed upon by police and, therefore, he is entitled to challenge the seizure of the vehicle

and the subsequent search of the vehicle and its contents. See, <u>United States v. Ochs</u>, 595 F.2d 1247, 1253 (2d Cir.), *cert. denied*, 444 U.S. 955 (1979);   <u>United States v. Rubio–Rivera</u>, 917 F.2d 1271, 1275 (10th Cir.1990) ("Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.") Therefore, the government has the burden to prove the legality of the stop and subsequent search of the vehicle and its contents.

B.   <u>The Initial Seizure Of Peter Compton Was Without Articulable Suspicion and Thereafter Escalated to an Arrest Without Probable Cause.</u>

There are three types of encounters that may occur between law enforcement officers and individuals. The first type occurs when an individual agrees to speak to a law enforcement officer absent any duress or coercion. The second involves a limited detention of the individual based on a reasonable suspicion that criminal activity is underway. The third, involves an arrest based on probable cause that a crime has been committed. The first type of encounter does not implicate the fourth amendment, while the latter two are "seizures" within the meaning of the Fourth Amendment. <u>United States v. Hooper</u>, 935 F.2d 484, 490 (1991) (*citations omitted*).

A seizure within the meaning of the Fourth Amendment occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen...." <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). The test for determining whether an individual has been restrained by coercive police conduct was set forth first in Justice Stewart's opinion in <u>United States v. Mendenhall</u>:

> [A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.
>
> We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards.

United States v. Mendenhall, 446 U.S. 544, 554 (1980).

Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person. Terry v. Ohio, 392 U.S. 1, 16 (1968).

In this case there is no question that Agent Gottschall seized Peter Compton. He directed Compton back to the car and commanded him to get into his vehicle immediately. The officer then took the keys to the vehicle, and requested identification from the defendants which he received from the driver and retained. An objectionably reasonable person would not feel free to leave under these circumstances.

In order to justify this intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Terry v. Ohio, 392 U.S. 1, 21 (1968). Reasonable suspicion is more than simply a hunch about possible criminality. United States v. Sokolow, 490 U.S. 1, 7 (1989). No reasonable suspicion is articulable in this case. At the point in time of the seizure there was no basis to order the defendants into the SUV. At most, border patrol agents witnessed a Ford SUV turn into an open business on the side of Route 11. The record is unclear as to who the agents were, where the agents were, what they could see from the vantage point they claim to have had and what was communicated to Agent Gottschall. Upon arrival, according to Peter Compton, the agent would have observed the brothers shopping and purchasing items at the business. The

agent did not ask a single question before commanding the defendants to return to and enter the vehicle.  Nothing known at the time of this seizure justified its extent.

After obtaining identification, the agent relayed the vehicle information to dispatch and identified both occupants as sons of the owner of the vehicle. The agent returned to the vehicle.  Upon information and belief, the agent will claim to have observed the occupants were extremely nervous, and upon looking through a window in the vehicle observed a blanket covering bulky, round objects.  Agent Gottschall asked to search the vehicle and both occupants refused to consent to the search.  At this point, between 15 and 25 minutes after the initial seizure, Agent Gottschall called for a K-9 unit to conduct a sniff on the exterior of the car.  Prior to the K-9 sniff of the vehicle, both Peter and Lorenzo Compton were removed from the SUV, placed in handcuffs, and commanded to stay on the side of the driveway.  <u>United States v. Miller</u>, 382 F. Supp. 2d 350, 367 (N.D.N.Y. 2005) (Defendant's traffic stop was converted to custodial arrest when defendant removed from car).

    C.    <u>The Search of the Vehicle Following the Illegal Detention of Mr. Compton was Unlawful.</u>

The defense contends that at the time of the stop, Agent Gottschall did not have articulable suspicion to detain and order Peter Compton into the vehicle.  Further, at no time prior to retaining the keys and identification, placing Mr. Compton in handcuffs and corralling him on the side of the driveway did the Officer have probable cause to arrest Peter Compton.  When the Agent kept the keys,  the identification documents, removed him from the vehicle, placed him in handcuffs, and corralled him on the side of the driveway he was placed under arrest.  This arrest was unlawful, and without probable cause.  As such, it is a violation of Mr.

Compton's right to be free from unlawful seizures, and in violation of the Fourth Amendment. See United States v. Milan-Diaz, 975 F.2d 720, 721 (10th Cir. 1992)(Defendant considered under arrest at time the keys to the vehicle were retained).

The defense further contends that the taint imposed by the illegal arrest on the subsequent evidence obtained following Mr. Compton's arrest (Marijuana) is not attenuated from the Fourth Amendment violation and as such must be excluded from the case.  Wong Sun v. United States, 371 U.S. 471 (1963).

In summary, the initial stop of Mr. Compton was without reasonable suspicion.  Even if the government can articulate some suspicion, the length of the *Terry* stop exceeded what would be reasonable.  No new facts developed between the *Terry* stop and the immediate arrest of the defendant.  The significant impairment of the Comptons' ability to move about freely under the orders of the agent, the retention of their personal identification and car keys as well as the handcuffing and further orders to remain by the side of the road was without probable cause from the outset of the agent's demands leading Peter Compton to reasonably believe he was not free to leave.  The search and seizure that followed was tainted by the illegal arrest and in violation of the Fourth Amendment.  As such, the fruits of that search must be suppressed.

**Conclusion**

For the reasons stated above, the defendant's motion for the suppression of tangible evidence and the exclusion of any un-noticed statements should be granted pursuant to Rule 14.1 of the Local Rules of the Northern District of New York , Rule 16 of the Federal Rules of Criminal Procedure and the Fourth Amendment.

Dated: May 1, 2014                              Submitted by:

                                                   LISA PEEBLES

                                                   Federal Public Defender

                                      By:   */s/ Paul Evangelista*
                                                    Paul Evangelista, Esq.
                                                    Assistant Federal Public Defender
                                                    Bar Roll No. 507507
                                                    39 North Pearl St., 5th Floor
                                                    Albany, NY 12207
                                                    Tel: (518)436-1850
                                                    Fax: (518)436-1780
                                                    Email:  paul_evangelista@fd.org

To:

United States District Court Clerk

AUSA Katherine Kopita, Esq.