UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA )
v. ) Case No.: 13-CR- 405
) Honorable Norman A. Mordue
PETER COMPTON ) Senior U.S. District Judge
    Defendant. )

I, Peter Compton, pursuant to 28 U.S.C. §1746, declare the following:

1.    I am a defendant in this case and make this declaration in support of the motion made on my behalf to suppress evidence seized on or about August 22, 2013 following stop, search and seizure of myself and the vehicle I was in and its contents and any statements attributed to me by police in response to law enforcement questioning.

2.    On August 22, 2013, I was a passenger in a vehicle driven by my brother, Lorenzo Compton, traveling along Route 11 in Chateaugay, New York. I had an expectation of privacy in the vehicle and its contents. On that day, my brother and I were traveling in my mother's Ford Sport Utility Vehicle. We had the permission of my mother to use the vehicle. Both Lorenzo and I frequently were given permission to use our mother's SUV by our mother. During the time of the stop and before, both Lorenzo and I lived with our mother. We used the vehicle as our own. On the day of the stop, my brother turned the SUV into a vegetable and plant business on the side of Route 11 in Chateaugay, New York. The business was located at 8169 State Route 11. The vehicle I was in was legally registered and equipped, and while my brother drove the vehicle, he followed the law and all of the rules of the road. At no time did he commit a traffic infraction prior to pulling into the Farm Stand.

3. My brother and I got out of the SUV and began shopping for plants and vegetables for sale at the farm stand. We were speaking with the proprietor and were collecting items to purchase at the stand. We spent approximately ten minutes shopping for items and were about to pay when a marked patrol car pulled into the farm stand.

4. A uniformed and armed officer got out of the patrol vehicle and immediately ordered my brother and me to get into our vehicle which was parked approximately 20 feet away from where we were standing with our items for purchase. We did as the officer commanded and got into our SUV. The officer then ordered my brother to roll down the driver's side window of the vehicle and ordered us both to give him identification documents.

5. The officer ordered me to stay in the vehicle; he took my brother's identification documents and the keys to the SUV, and returned to his patrol car. About five to ten minutes later, the patrol officer returned to the vehicle and asked for consent to search the vehicle. Neither my brother nor I gave the officer consent to search the vehicle. At this point he ordered us out of the SUV, handcuffed my brother and me and commanded that we sit on the side of the driveway of the business.

6. I did as the officer commanded and sat on the side of the driveway, in handcuffs, while the officer waited for a drug sniffing dog to arrive. After about five or ten minutes, another officer arrived with a dog and began to search the SUV. I witnessed the dog walk around the outside of the vehicle and then the Officer opened the rear door of the vehicle and ordered the dog into the vehicle. I did not observe the dog react to the vehicle in any manner whatsoever.

7. After the dog exited the vehicle, the officers searched the vehicle. Officers claim to have discovered bags of marijuana underneath blankets in the rear of the SUV.

8. I do not recall making any statements to the Officers at any time during the search of the vehicle. Nor do I recall making any incriminating statements after the search of the vehicle.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on the 28th day of November, 2013

*Peter M Compton*
Peter Compton